UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KATIE GRZYWNA, on behalf of her daughter
JANE DOE,

                                        Plaintiff,

            v.                                                    05-CV-0187
                                                                 (LEK/DRH)
SCHENECTADY CENTRAL SCHOOL DISTRICT,
ERIC ELY, both Individually and as Assistant
Superintendent of the Schenectady Central
School District, NICKI DiLEVA, both Individually
and as Assistant Principal of the Mont Pleasant Middle
School, MATTHEW DeLORENZO, both Individually
and as Assistant Principal of the Mont Pleasant Middle
School, and GARY COMLEY, both Individually and as
Principal of the Mont Pleasant Middle School,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### MEMORANDUM, DECISION and ORDER[1]

**I.      FACTS**

        The following facts are taken from Plaintiff's Complaint (Dkt. No. 1) and, for

purposes of this motion, are assumed to be true.  The infant Plaintiff, Jane Doe, is a twelve

year old student at the Mont Pleasant Middle School located within the Schenectady Central

School District (the "School District"), Schenectady, New York.  Complaint (Dkt. No. 1) at ¶ 9.

In early January 2005, Plaintiff began wearing to school a red, white, and blue beaded

necklace that she made.  Id. at ¶ 10.  According to Plaintiff, she wore the necklace to show

her support for the soldiers serving in Iraq (including certain members of her family) and to

demonstrate her love of country.  Id. at ¶ 11.  On January 4, 2005, Defendants informed

Plaintiff that she could not wear the necklace because it could be considered to be gang

---

[1]  For printed publication in the Federal Reporters.

related.  Id. at ¶ 17.  School policy prohibits the wearing of gang related items.  Id. at ¶ 15.

Plaintiff was advised that if she did not comply with school policy, she would be subjected to

discipline.  Id. at ¶ 17.

Plaintiff then commenced the instant action asserting that Defendants' policy, and

its enforcement as to her, violates her rights under the First Amendment.  Currently before

the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c)

on the grounds that: (1) the School District is entitled to Eleventh Amendment immunity; (2)

the individual defendants are entitled to qualified immunity because (a) Plaintiff does not

possess any First Amendment rights; (b) the wearing of the beaded necklace does not

convey a particularized message; and (c) there is not a great likelihood that the message will

be understood by those viewing it; and (3) the dress code policy of the School District is

neither overbroad nor vague.  Motion to Dismiss (Dkt. No. 5).

## II.      STANDARD OF REVIEW

Because this matter is before the Court on a motion made pursuant to Federal Rule

of Civil Procedure (12)(c), "'[t]he court may not dismiss [the] complaint unless it appears

beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no

set of facts which would entitle [her] to relief.'"  DeMuria v. Hawkes, 328 F.3d 704, 706 (2d

Cir. 2003) (quoting Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir.

1997)).  "Because the complaint must allege facts which confer a cognizable right of action,

the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims."  DeMuria, 328 F.3d at 706 (internal quotation, citation

and alterations omitted).  In reviewing the pending motion, the Court has disregarded all

materials that have been submitted outside the pleadings.

### III.     DISCUSSION

#### a.     Eleventh Amendment Immunity

Defendants move to dismiss on the ground that a school district is an arm of the state that is entitled to Eleventh Amendment immunity.  This Court recently considered and rejected such arguments in Cohn v. New Paltz Central Sch. Dist., 363 F. Supp. 2d 421 (N.D.N.Y. 2005).  Defendants have proffered no evidence or legal arguments warranting a different result.  Accordingly, this argument is rejected.

#### b.     Whether Plaintiff Has First Amendment Rights

Defendants next argue that, considering Plaintiff's relatively young age, she does not enjoy the full panoply of First Amendment rights.  While "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986), it is clear that middle-school-aged students do have a constitutionally protected right to engage in non-disruptive, non-violent, silent speech to express views disapproving of war.  Tinker v. Des Moines Independent Central Sch. Dist., 393 U.S. 503 (1969) (students of ages thirteen, fifteen, and sixteen had a protected First Amendment right to wear black arm bands expressing their views concerning the hostilities in Vietnam).[2]  In this case, Defendant has presented no argument that Plaintiff was disruptive or that she engaged in any conduct other than quietly wearing her necklace.[3]  Accordingly, neither Plaintiff's age nor the particular

---

[2] The Court is neither suggesting that this is the full extent of a young student's First Amendment rights nor that a student's First Amendments rights extend any further.  It is sufficient for this case to note that students do have the rights just stated.

[3] The Court is aware that Defendants are likely to contend that the wearing of gang-related items may be disruptive to the school learning environment.  There is no indication at this time,

(continued...)

manner of her conduct precludes her from asserting First Amendment rights.  This is not to say, however, that Plaintiff was engaging in conduct protected by the First Amendment.  That is the subject of the ensuing discussion.

Plaintiff alleges that the School District's policy prohibiting her from wearing the red, white and blue beaded necklace is a violation of her right to free expression under the First Amendment.  Complaint (Dkt. No. 1) at ¶¶ 23-27.  Defendants respond that Plaintiff's necklace does not constitute expressive conduct, and that the School District's policy does not impermissibly deny Plaintiff any First Amendment freedoms she may possess.  Def. Memo. of Law (Dkt. No. 5) at 6.

"The First Amendment inquiry contains two parts: (1) whether [Plaintiff's] action constitute 'expressive conduct' entitled to protection under the First Amendment, as incorporated by the Fourteenth; and if so, (2) whether the [School District's policy] . . . impermissibly denies her such protection."  Zalewska v. County of Sullivan, New York, 316 F.3d 314, 319 (2d Cir. 2003) (citing Texas v. Johnson, 491 U.S. 397, 403 (1989)).  As the Second Circuit explained in Zalewska:

> [T]he fact that something is in some way communicative does not automatically afford it constitutional protection.  For purposes of the First Amendment, the Supreme Court has repeatedly rejected the view that "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376 (1968).  We echoed this view in East Hartford Educ. Ass'n v. Bd. of Educ. of the Town of East Hartford, 562 F.2d 838 (2d Cir. 1977), where we recognized that acknowledging the symbolic speech-like qualities of a course of conduct is "only the beginning, and not the end, of constitutional inquiry."  562 F.3d at 857.

---

[3](...continued)
however, that Plaintiff personally was doing anything disruptive, but was merely wearing her necklace.

> To determine whether conduct is expressive and entitled to constitutional
> protection requires an inquiry into whether the activity is "sufficiently
> imbued with the elements of communication to fall within the scope of the
> First and Fourteenth Amendments," Johnson, 491 U.S. at 404, for not all
> conduct may be viewed as speech simply because by her conduct the
> actor intends to express an idea.  See Spence v. Washington, 418 U.S.
> 405, 409 (1974).  To be sufficiently imbued with communicative elements,
> an activity need not necessarily embody "a narrow, succinctly articulable
> message," Hurley v. Irish American Gay, Lesbiand and Bisexual Group of
> Boston, 515 U.S. 557, 569 (1995), but the reviewing court must find, at
> the very least, an intent to convey a "particularized message" along with a
> great likelihood that the message will be understood by those viewing it.
> Johnson, 491 U.S. at 404; Spence, 418 U.S. at 410-11.

Zalewska, 316 F.3d at 319; see also Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275 (5th

Cir. 2001).  "The protection of the First Amendment depends not only on whether the conduct

is expressive, but also on the context in which that expression takes place.  In the public

school arena, the free expression rights of students are balanced by the corresponding

interest of furthering the educational mission of schools."  Littlefield, 268 F.3d at 283;

Zalewska, 316 F.3d at 320.

## 1.    Particularized Message

Plaintiff bears the burden of demonstrating that her conduct warrants First

Amendment protection.  Church of Am. Knights of the KKK v. Kerik, 356 F.3d 197, 205 (2d

Cir. 2004).  Plaintiff "must advance more than a mere 'plausible contention' that [her] conduct

is expressive."  Id. (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293

(1984)).  Based on Plaintiff's Complaint, it is clear that she intended to convey a message.

She claims that she made and wore the flag-colored necklace to express "her support for

country, for members of this country's armed forces in general, and for her family members

serving in the Iraqi conflict." Complaint (Dkt. No. 1) at ¶ 11.  The First Amendment exists to

protect expressions we love, not only those we hate.  However, to say that one supports the

soldiers may not, in and of itself, express a particularized message.  Yet in context of the alleged facts, it does appear that Plaintiff has plead more than a "plausible contention" that her conduct is expressive.  Plaintiff has placed Defendants on notice of her claim that she had particular messages that she intended to convey.  It cannot be said that there are no facts that would entitle her to relief.  Plaintiff may be able to supply facts demonstrating that she was conveying a particularized message or particularized messages.

### 2.      Comprehensibility of Message

It also must be shown that there is a "great likelihood that [Plaintiff's] message will be understood by those viewing it."  Zalewska, 316 F.3d at 319.  "[T]he context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol."  Spence, 418 U.S. at 410; Zalewska, 316 F.3d at 320.  In Tinker v. Des Moines Independent Central School Dist., 393 U.S. 503 (1969), for example, "the wearing of black armbands in a school environment conveyed an unmistakable message about a contemporaneous issue of intense public concern - the Vietnam hostilities."  Spence, 418 U.S. at 410.  Similarly, in Spence, the Supreme Court found that the display of a flag with a large peace symbol affixed to it "roughly simultaneous with and concededly triggered by the Cambodian incursion and the Kent State tragedy," warranted First Amendment protection.  Id.  In both of these cases, considering the context of the "speech," the "speaker" engaged in conduct likely to be interpreted as expressing an idea or statement.

By way of contrast, the Zalewska case involved a woman who refused to comply with a policy requiring the wearing of pants.  316 F.3d 314.  According to the plaintiff, her continued wearing of a skirt expressed her deeply held cultural values.  The Second Circuit stated that

> it is difficult to see how Zalewska's broad message would be readily understood by those viewing her since no particularized communication can be divined simply from a woman wearing a skirt. . . .  The Supreme Court has been careful to distinguish between communicative activity with a clear contextual message, such as the wearing of a black armband in protest during the Vietnam War, compared with other types of activities, like choosing what to wear in the ordinary course of employment. . . . [A] person's choice of dress or appearance in an ordinary context does not possess the communicative elements necessary to be considered speech-like conduct entitled to First Amendment protection. . .  Of course, there may exist contexts in which a particular style of dress may be a sufficient proxy for speech to enjoy full constitutional protection . . . [where, for example, the] message [would be] readily understood by others in [the] high school context . . . .

Zalewska, 316 F.3d at 320.  Similarly, in Young v. New York City Transit Auth., 903 F.2d 146 (2d Cir. 1990), the Second Circuit addressed whether a prohibition on begging and panhandling in the New York City subways violated free speech rights.  The plaintiffs in Young argued that every time a homeless or needy persons extends his or her hand, he or she is communicating.  The Second Circuit held that the act of begging did not express a particularized message likely to be understood by those viewing it.  As the court stated:

> begging is not inseparably intertwined with a "particularized message."  It seems fair to say that most individuals who beg are not doing so to convey any social or political message.  Rather, they beg to collect money.  Arguably, any given beggar may have "an intent to convey a particularized message," e.g.: "Government benefits are inadequate;" "I am homeless;" or "There is a living to be made in panhandling."  To be sure, the possibilities are myriad.  However, despite the intent of an individual beggar, there hardly seems to be a "great likelihood" that the subway passengers who witness the conduct are able to discern what the particularized message might be.

Young, 903 F.2d at 153-54.  These cases make it clear that the actor's subjective intent is not dispositive over whether her conduct is protected.  Rather, there is an objective component that requires consideration of whether, under the circumstances, the particular conduct is likely to be understood or perceived as expressing a particular message.

Here, it cannot be questioned that Plaintiff's wearing of the red, white and blue necklace coincided with the ongoing war in Iraq and that there is public debate about that war.  While Plaintiff claims that she was showing support for her country, for her family members who served in Iraq, and for her support of members of the military in general, people do not automatically associate the colors red, white, and blue (or a red, white, and blue beaded necklace) as necessarily demonstrating support for the troops.  It is unclear at this point in the litigation whether anything about the necklace itself or the context in which Plaintiff wore the necklace gave any particular expressive meaning to it.  See Spence, 418 U.S. at 410.

Nevertheless, it must be kept in mind that we are dealing with a motion to dismiss.  Without the benefit of seeing the necklace and knowing the circumstances existing in Plaintiff's school at the time she wore the necklace, it cannot now be concluded that viewers would not have understood Plaintiff to be conveying a particularized message.  For example, Plaintiff may be able to present proof that there was an ongoing, robust discussion of the war in Iraq at her school and that she wore the red, white and blue beads to express her viewpoint on that debate.  Under such a scenario, Plaintiff may be able to demonstrate that the average viewer in her school would have understood her wearing the flag-colored necklace as conveying a particular message.[4]  Accordingly, it cannot be said that there are no facts which, if true, would entitle Plaintiff to relief.

---

[4] The Court is not suggesting that this is the only way Plaintiff could prove her claim, but is merely providing an example of facts that may support a claim for a First Amendment violation.

### 3.    Qualified Immunity

Defendants seek dismissal of the claims against the individual defendants on the ground of qualified immunity.  Public officials are "protected by qualified immunity from civil liability for actions taken in their official capacity if those actions were objectively reasonable in light of clearly established rules then extant."  Morris-Hayes v. Board of Educ. of Chester Union Free School Dist., 423 F.3d 153, 158 (2d Cir. 2005).  Although the Court is cognizant of its obligation to address the issue of qualified immunity at the earliest practicable time, it cannot resolve this issue on the current record.

In light of Tinker, a reasonable person would have known that students have a clearly established right to engage in non-disruptive, non-violent, silent conduct designed to express their disapproval over war.  There appears to be no dispute that Plaintiff was not disruptive and non-violent and that she wore her beads as a silent means of expression.  The question, then, is whether Defendants' actions in directing Plaintiff to remove her necklace was reasonable in light of this clearly established rule.

Without knowing the circumstances existing in Plaintiff's school in January 2005, the Court is unable to determine whether Defendants could have reasonably believed that they were not infringing upon Plaintiff's First Amendment freedoms.  If, for example, based on direct or circumstantial evidence, there are facts demonstrating that Defendants had reason to know that Plaintiff was expressing a particularized message, then their actions in prohibiting Plaintiff from wearing the necklace may have violated her free speech rights.  On the other hand, if there are no facts suggesting that persons in Plaintiff's school understood Plaintiff to be expressing a particularized message, then it is likely that Defendants acted in a good faith belief that there were not infringing upon Plaintiff's rights and, therefore, would be

entitled to qualified immunity.  Similarly, there may be facts of an ongoing gang problem in the City of Schenectady and/or the Schenectady School District and a connection between the wearing of beaded necklaces and gangs that may justify a policy prohibiting the wearing of beaded necklaces.  In light of the procedural posture of this case and the factual nature of this inquiry, the Court cannot now make this determination.  Of course, Defendants are free to raise this, or any other issues raised herein, on a motion for summary judgment.

     **c.**  **Whether the Policy is Vague or Overbroad**

    Plaintiff also mounts a facial challenge to the School District's policy.  "A regulation is unconstitutional on its face on overbreadth gounds where there is a 'likelihood that the statute's very existence will inhibit free expression' by 'inhibiting the speech of third parties who are not before the Court.'" Saxe v. State College Area Sch. Dist., 240 F.3d 200, 214 (3d Cir. 2001) (quoting Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 799 (1984)).  The Court does not have the School District's policy before it and, therefore, is in no position to determine whether it is overbroad or vague.  There may be facts, such as the dress code policy itself, evidencing that the dress code is overbroad and/or vague.  Thus, this issue is better addressed on a motion for summary judgment or at trial.  The Court again concludes that the Complaint adequately puts Defendants on notice of Plaintiff's claim and states a claim upon which relief could be granted.

**IV.**  **CONCLUSION**

    Accordingly, it is hereby

    ORDERED, that Defendants' motion to dismiss (Dkt. No. 5) is **DENIED**; and it is further

    ORDERED, that the Clerk serve a copy of this order on all parties.

IT IS SO ORDERED.

Dated:      March 07, 2006
            Albany, New York

Lawrence E. Kahn
U.S. District Judge